**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT M. GLEN, <br><br> Plaintiff, <br><br> v. <br><br> VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, and MASTERCARD INTERNATIONAL INCORPORATED, <br><br> Defendants. | C.A. NO.: _____-\_\_ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Robert M. Glen ("**Glen**") hereby files this action against Defendants Visa Inc. ("**Visa Inc.**"), Visa U.S.A. Inc. ("**Visa U.S.A.**"), Visa International Service Association ("**Visa International**") (Visa Inc., Visa U.S.A., and Visa International are collectively referred to herein as "**Visa**"), Mastercard Incorporated ("**Mastercard Inc.**"), and Mastercard International Incorporated ("**Mastercard International**") (Mastercard Inc. and Mastercard International are together referred to herein as "**Mastercard**"), and respectfully states as follows:

### I. INTRODUCTION

1. This action arises under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021 *et seq.* (the "**Act**"), also known as the LIBERTAD Act or the Helms-Burton Act.

2. Title III of the Act provides U.S. nationals whose property in Cuba was confiscated by the communist Cuban government with a private right of action against those who traffic in, or participate in the trafficking of, that property.

3. Glen holds a claim to two beachfront properties located in Varadero, Cuba, on the Hicacos Peninsula. Varadero is one of Cuba's most popular beach resort towns, featuring one of

the Caribbean's best beaches and dozens of hotels and resorts that attract tourists and vacationers from around the world. Varadero is also the site of one of Cuba's busiest international airports.

4. Following the communist Cuban revolution, the properties were confiscated from Glen's family by the Cuban government. After the revolution, Glen's family fled Cuba, and Glen later became a naturalized U.S. citizen.

5. Today, the two properties are the site of four separate beachfront resorts, which together feature over 1,400 guestrooms, in addition to dozens of swimming pools, restaurants, and bars.

6. Under the Act, a person is liable for trafficking in confiscated property if that person, among other things, knowingly "engages in a commercial activity using or otherwise benefiting from confiscated property," or knowingly "participates in, or profits from, trafficking . . . by another person."

7. Defendants operate payment processing networks that facilitate credit card transactions between cardholders, merchants, and banks.

8. Defendants offer their network services to merchants in Cuba, including the four beachfront resorts on the properties confiscated from Glen's family: the Iberostar Tainos, the Meliá Las Antillas, the Blau Varadero, and the Starfish Varadero.

9. By affirmatively permitting these hotels to collect payment from their guests through Visa- or Mastercard-branded credit card (and by earning revenue in connection with each such swipe), Defendants are engaging in commercial activity that uses or otherwise benefits from Glen's confiscated property. Defendants are also participating in, and profiting from, trafficking committed by the hotels themselves.

10. Because Defendants have trafficked in confiscated property in violation of the Act, they are subject to Glen's private action for civil damages under Title III, measured as the greater of the current fair market value of the property, or the value of the property at the time of confiscation plus interest.

11. Glen accordingly brings this statutory action to vindicate his claim to confiscated property and to obtain the compensation that he is rightfully entitled to under the Act.

## II. PARTIES

12. Plaintiff Robert M. Glen is an individual residing in Plano, Texas. Glen is a naturalized United States citizen and a "United States national" pursuant to 22 U.S.C. § 6023(15).

13. Defendant Visa Inc. is a corporation chartered in Delaware. Visa Inc. may be served through its registered agent at the following address: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

14. Defendant Visa U.S.A. Inc. is a corporation chartered in Delaware. Visa U.S.A. may be served through its registered agent at the following address: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

15. Defendant Visa International Service Association is a corporation chartered in Delaware. Visa International may be served through its registered agent at the following address: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

16. Visa U.S.A. and Visa International are wholly owned consolidated subsidiaries of Visa Inc.

17. Defendant Mastercard Incorporated is a corporation chartered in Delaware. Mastercard Inc. may be served through its registered agent at the following address: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

17. Defendant Mastercard Incorporated is a corporation chartered in Delaware. Mastercard Inc. may be served through its registered agent at the following address: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

18. Mastercard International Incorporated is a corporation chartered in Delaware. Mastercard International may be served through its registered agent at the following address: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

19. Mastercard International is the principal operating subsidiary through which Mastercard Inc. conducts its business.

### III. JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Glen's claim arises under 22 U.S.C. § 6082 and the amount-in-controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees.

21. This Court may exercise personal jurisdiction over each Defendant by virtue of their incorporation in Delaware.

22. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because Defendants are residents of the State in which this District is located.

### IV. STATEMENT OF FACTS

**A. Passage and Implementation of the Act**

23. The Act became effective March 12, 1996.

24. Among the Act's legislative purposes is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime."

25. Title III of the Act ("**Title III**") establishes a private right of action for money damages against any person who "traffics" in confiscated property.

26. Glen did not previously have an opportunity to bring a private right of action because, until recently, private rights of action under Title III were suspended pursuant to the authority given to the President of the United States by Congress under the Act.

27. The President has delegated this suspension authority to the United States Secretary of State. On March 4, 2019, the State Department announced a partial lifting of the suspension to permit private actions to proceed, beginning March 19, 2019, against Cuban entities or sub-entities identified on the State Department's restricted entities list. On or about April 2, 2019, the partial lifting of the suspension was extended again through May 1, 2019. Most recently, on April 17, 2019, the State Department announced a full lifting of the suspension, beginning May 2, 2019.

28. In his remarks regarding the decision, Secretary of State Pompeo made clear that "[e]ffective May 2nd . . . the right to bring an action under Title III of the Libertad Act will be implemented in full."

B.   **Glen's Claim to Property in Cuba**

29. Glen is the owner of property located in Varadero, Cuba that was originally owned by Glen's great-grandfather, Sergio de la Vega, who lived in Cárdenas, across the bay from the Hicacos Peninsula. Glen's great-grandfather traveled by boat to the peninsula and built improvements upon it.

30. Ownership of the property later passed to Glen's grandfather, Manuel de la Vega. When Manuel died in 1928, the properties passed to his wife, Ana Maria Martinez Andreu ("**Martinez Andreu**"), Glen's grandmother.

31. Manuel and Martinez Andreu divided their property into two, contiguous plots. The first was known as "**Blancarena**," and included 280 meters of ocean frontage.

32. The second was known as "**Cotepen**" (short for "Co-Territorial Peninsula") and included 715 meters of ocean frontage. (Together, Blancarena and Cotepen are the "**Glen Properties**"). Glen's family built a small home on the Glen Properties.

33. As a child, Glen visited the Glen Properties. The photograph reproduced below is of Glen as a young boy at the Glen Properties.



34. Cotepen is contiguous to Blancarena and sits directly to the east of Blancarena. Cotepen and Blancarena are of equal depth, each extending southward toward the present-day Autopista Sur, the main road that traverses the peninsula.

35. When Martinez Andreu died, Blancarena passed to Elvira de la Vega Martinez ("**Elvira**"), one of Martinez Andreu's two daughters, and Cotepen passed to Ana Maria de la Vega Martinez ("**Ana Maria**"), Martinez Andreu's other daughter. Elvira is Glen's mother. Ana Maria is Glen's aunt.

36. Elvira and Ana Maria exercised ownership over Blancarena and Cotepen and worked to develop the land. In the late 1950s, Elvira considered selling a portion of Blancarena and subdividing it, but her plans were interrupted by the revolution.

37. Maps and surveys drawn in 1958, just prior to the Cuban revolution, reflect the location of the Glen Properties on the peninsula, including in connection with the construction of a canal (still in existence today) directly to the south of the properties.

38. After January 1, 1959, and in connection with Cuban revolution, the communist Cuban government confiscated the Glen Properties.

39. Following the revolution, Ana Maria and Elvira fled Cuba.

40. When Ana Maria and Elvira died, ownership of Blancarena and Cotepen passed solely to Glen.

41. Like Ana Mara and Elvira, Glen has continued to maintain a claim to the Glen Properties.

42. On information and belief, the Cuban government maintains possession of the Glen Properties.

43. The Cuban government has not paid any compensation to Glen or his family for its seizure of the Glen Properties. Instead, as detailed below, the Cuban government has worked with hotel chains to build, develop, and operate four beachfront resorts on the Glen Properties.

C. **The Beachfront Hotels Occupying the Glen Properties**

44. Varadero sits on the Hicacos Peninsula. The narrow peninsula, which is approximately eleven miles long but only a mile or so wide, extends in a northeasterly direction from the northern side of the Cuban mainland. The northern side of the peninsula faces the open ocean and features miles of contiguous, white-sand beach. The southern side of the peninsula faces the Bay of Cárdenas.

.
.

45. Today, Varadero is one of Cuba's most popular beach resort towns, featuring one of the Caribbean's best beaches, dozens of hotels and resorts, a nature reserve, and other amenities.

46. According to TripAdvisor's 2019 Travelers' Choice awards, Varadero is the second-best beach in the world. And according to Lonely Planet, Varadero boasts a beach that is "undoubtedly one of the Caribbean's best."

47. Because of its world-renowned beach and accessibility, Varadero is a popular destination for tourists from around the world, particularly Europe and Canada. The resort town is easily accessible from Juan Gualberto Gómez Airport, one of Cuba's busiest international airports.

48. The Glen Properties are the site of four separate beachfront hotels, which run contiguously from west to east along the northern, beachfront side of the peninsula.

49. Blancarena is the site of Iberostar Tainos, operated by Spanish hotel chain Iberostar (the "**Iberostar Tainos**"). The Iberostar Tainos is a four-star, all-inclusive reports featuring 272 guestrooms.

50. Cotepen is the site of three resorts. The first is currently known as Meliá Las Antillas (the "**Las Antillas**"), operated by Spanish hotel chain Meliá Hotels International, on the site of a former Beaches-brand resort. Las Antillas is a four-star, adults-only, all-inclusive resort featuring 350 guestrooms. The second is known as the Blau Varadero (the "**Blau**"). The Blau is an adults-only, all-inclusive resort featuring 395 guestrooms. The third is known as the Starfish Varadero (the "**Starfish**"). The Starfish is a family friendly, all-inclusive resort featuring 411 rooms. (Together, the Iberostar Tainos, Las Antillas, Blau, and Starfish are the "**Subject Hotels**").

51. In addition to their over 1,400 guestrooms, the Subject Hotels also feature restaurants, bars, swimming pools, and other amenities.

52. The Subject Hotels have never paid any compensation to Glen or his family to operate on the Glen Properties. Nor do the Subject Hotels have Glen's authorization to do so.

**D.  Defendants' Businesses and Trafficking in the Glen Properties**

53. Visa and Mastercard each provide network services within the global payments industry.

54. Defendants each operate a similar business model, in which the "typical" transaction involves four participants, in addition to the Visa or Mastercard network: (1) the account holder (a consumer or business who holds a credit card or uses another device enabled for payment); (2) the issuer (the account holder's financial institution that issues the branded credit card or payment product); (3) the merchant (*e.g.*, the retailer, restaurant, hotel, or airline that accepts the brand); and (4) the acquirer or acquiring bank (the merchant's financial institution).

55. The Visa and Mastercard networks provide the processing and operational systems that link these participants together. More specifically, Visa and Mastercard link merchants and acquirers, on the one hand, with account holders and issuers, on the other hand.

56. Visa has published the figure below to illustrate the parties to a typical transaction on the Visa network:



57. Similarly, Mastercard has published the figure below to illustrate the parties to a typical transaction on the Mastercard network:



58. Defendants earn revenue by facilitating payment transactions, including service fees earned in connection with authorization, clearing, and settlement, and in international transaction fees in connection with cross-border processing and currency conversion activities.

59. In other words, each time an account holder presents his or her credit card at the point of sale, Visa or Mastercard stand to earn a fee. Defendants therefore seek to maximize the number of merchants that utilize their network services. Defendants also seek to maximize cross-border transactions and their concomitant fees and revenue.

60. Defendants facilitate transactions in over 200 countries and territories involving more than 150 currencies.

61. Defendants offer network services to merchants in Cuba.

62. Although credit card usage is not as widespread in Cuba as in more developed nations like the United States, large hotels, such as the Subject Hotels, are one of the more common places where credit cards are accepted in Cuba, including credit cards carried by tourists.

63. Upon information and belief, hotel guests are currently able to use Mastercard-branded credit cards to pay for stays at the Subject Hotels, as long as the card is not issued by a U.S. bank. (Previously, guests could also use credit cards issued by U.S. banks). Upon information and belief, Mastercard currently provides network services for the Subject Hotels, as merchants.

64. Upon information and belief, until September 2019, hotel guests were also able to use Visa-branded credit cards to pay for stays at the Subject Hotels, as long as the card was not issued by a U.S. bank. (Previously, guests could also use credit cards issued by U.S. banks). In other words, until September 2019, Visa provided network services for the Subject Hotels, as merchants.

65. Each time a hotel guest (the account holder) uses a Mastercard-branded credit card to pay for a stay at one of the Subject Hotels (the merchant), Mastercard knowingly and intentionally traffic in the Glen Properties, without his authorization. Mastercard also profits from such trafficking, by, among other things, collecting fees derived from account holders' use of Mastercard-branded credit cards at the Subject Hotels.

66. On August 27, 2019, Glen provided notice of his claims to Defendants in compliance with 22 U.S.C. § 6082(a)(3)(B).

67. Mastercard did not respond to Glen's statutory notice and, upon information and belief, continues to traffic in the Glen Properties.

68. Visa responded to Glen's statutory notice on September 26, 2019. Visa maintained in its response that it "has consistently operated in accordance with all applicable laws and regulations," but also informed Glen that it "has instructed its licensees that all Visa-branded cards cannot be used at the [Subject Hotels] henceforth."

69. Notwithstanding Visa's apparent change in policy, Visa remains liable for its prior trafficking in the Glen Properties.

70. Each time a hotel guest (the account holder) used a Visa-branded credit card to pay for a stay at one of the Subject Hotels (the merchant), Visa knowingly and intentionally trafficked in the Glen Properties, without his authorization. Visa also profited from such trafficking, by, among other things, collecting fees derived from account holders' use of Visa-branded credit cards at the Subject Hotels.

## V. JURY TRIAL DEMAND

71. Glen hereby demands a trial by jury on all issues so triable.

## VI. CAUSE OF ACTION

### Trafficking in Confiscated Property
### 22 U.S.C. § 6082(a)

72. Glen incorporates by reference all of the allegations set forth in all the preceding paragraphs of the Complaint as if fully set forth herein.

73. Glen is a U.S. national and holds a claim to property that was confiscated by the Cuban government after January 1, 1959, namely, the Glen Properties.

74. Defendants are each a "person" as defined by 22 U.S.C. § 6023(11).

75. Defendants have knowingly trafficked (and Mastercard continues to knowingly traffic) in the Glen Properties by engaging in commercial activity using or otherwise benefiting from confiscated property, including by providing network services to the Subject Hotels.

76. Defendants have knowingly trafficked (and Mastercard continues to knowingly traffic) in the Glen Properties by participating in, or profiting from, trafficking committed by the Subject Hotels, including the Subject Hotels' operation of beachfront resorts on the Glen Properties.

77. At all relevant times, Defendants have conducted such trafficking without Glen's authorization.

78. The fair market value of the Glen Properties far exceeds $50,000, exclusive of interest, costs, and attorneys' fees.

79. Glen was not eligible to file a claim with the Foreign Claims Settlement Commission.

80. In compliance with 22 U.S.C. § 6082(a)(3)(B), Glen provided notice to Mastercard of his claims at least 30 days before initiating this action. After the end of the 30-day period, Mastercard continued to traffic in the Glen Properties.

81. In compliance with 22 U.S.C. § 6082(a)(3)(B), Glen provided notice to Visa of his claims at least 30 days before initiating this action. At the close of the 30-day period, Visa informed Glen that it "has instructed its licensees that all Visa-branded cards cannot be used at the [Subject Hotels] henceforth."

## VII.   DEMAND FOR RELIEF

WHEREFORE, Glen respectfully asks the Court to enter judgment in his favor against Defendants:

    a.    Awarding actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

    b.    Awarding treble damages against Mastercard pursuant to 22 U.S.C. § 6082(a)(3)(B);

    c.    Ordering Defendants to pay Glen's reasonable attorneys' fees and costs incurred in this action pursuant to 22 U.S.C. § 6082(a)(1)(A)(ii);

    d.    Awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

    e.    Granting such other and further relief that the Court deems just and proper.

OF COUNSEL:

Craig A. Boneau
Ryan M. Goldstein
Scott Saldaña
REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
(512) 647-6100

October 4, 2019

ROSENTHAL, MONHAIT & GODDESS, P.A.

_/s/ Jessica Zeldin_

Jessica Zeldin (Del. Bar No. 3558)
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
jzeldin@rmgglaw.com

*Counsel for Robert M. Glen*